## Town of Charleston *v.* Town of Lunenburgh.

*Poor. Construction of statutes. Relief of transient poor.*

An order of removal of a pauper, unappealed from, is conclusive evidence of the settlement of the pauper.

In construing statutes in reference to the removal and relief of paupers, the same rule, that they are to have effect according to their obvious import, applies, as in the construction of other statutes.

It is not necessary, under chap. 16, sec. 12 of the Revised Statutes, that a transient person should be, literally, suddenly taken sick, or lame, and be confined at some house, in order to enable the town to recover the expenses of his support from the town in which he has his legal settlement. This provision of the statute applies to all transient persons, who are in need of present relief; and all persons, not having come to reside in any place, are transient; and it is of no importance, how the overseer of the poor becomes aware of the situation of such persons.

Indebitatus Assumpsit for money paid, laid out and expended Plea, the general issue, and trial by jury, June Term, 1850,—Poland J., presiding.

The plaintiffs' claim was for money paid for board and clothing for William S. Hinman, a pauper. On trial the plaintiffs offered in evidence an order of removal of Hinman from Charleston to Lunen-

burgh, made by two justices of the peace, March 4, 1847, and a warrant of removal, dated March 6, 1847, which issued to enforce the same order, and a return thereon, that Hinman was removed March 8, 1847;—to all which the defendants objected, but the objection was overruled by the court. The plaintiffs then gave evidence tending to prove, that in October, or November, 1847, Hinman came to Charleston, and was wandering about from place to place for several days; that he was in a very destitute condition, and his clothes were so ragged and poor, as to expose his naked person in an indecent manner, and were no suitable protection against the weather; that he had been afflicted, for many years, with a nervous disease, called St. Vitus' dance, which had been gradually increasing upon him, and that at this time his disease had become so violent, that he had very little control of his limbs and was wholly unable to perform any labor; that during this time he called upon the overseer of the poor of Charleston, and told him, that he intended to stay in Charleston, and that he wanted some help; that the overseer refused at this time to furnish him any assistance, and sent him away; that a few days subsequent to this application was made to the overseer by some of the inhabitants of Charleston, who informed him, that something must be done with Hinman, and that he was wandering about from house to house, in a very indecent situation as to clothing, and was troublesome; that about the ninth of November, 1847, the overseer found Hinman in a door yard of a house in Charleston, in the same condition as to clothing and health, as above described, and informed him, that he had procured a place for him to stay, at one Huntington's, in Charleston, a mile, or a mile and a half, from where he then was; that Hinman went to Huntington's, and remained there about seven weeks,—but in what manner he went there did not appear; that during this time he remained in the same condition, as above stated, and was furnished with some small articles of clothing, as charged in the plaintiff's bill; that he left Huntington's the latter part of December, 1847, and on the third of January, 1848, he called at the house of Mr. Cooley, in Charleston; that his clothes were then much torn and ragged, and he was much benumbed with cold; that he then declared he had come there to stay and would not leave the house; and that Cooley, on the next day, informed the overseer of the poor of Charleston of the condi-

tion and circumstances of Hinman, and the overseer agreed with Cooley to keep him, at $3,00 per week, and Cooley kept him until the seventh of March, 1848, when he left.

The plaintiffs' testimony tended also to prove, that the sums mentioned in their specification had been paid by them; that the prices paid for boarding Hinman were reasonable, and as cheap as they could get him kept; and that the articles of clothing charged were furnished and paid for, and were necessary. The testimony also tended to prove, that Hinman had led a wandering, vagrant life for many years, that he was in the habit of travelling about from place to place, and that he had been supported, for a considerable portion of the time, by the town of Lunenburgh. It also appeared, by the plaintiffs' evidence, that Hinman married his wife in Charleston, but that they had been separated for several years, and that the wife for some years had lived in Lowell, Massachusetts, where she kept a boarding house; but there was no evidence as to her having property, except by her statements and declarations. It also appeared, that one of the children of Hinman, a minor, lived in Charleston.

The defendants gave evidence tending to prove, that Hinman enjoyed good health, except the disease called St. Vitus' dance; that he was able, some portions of the time, to do some labor, and generally able to travel about from place to place; that for many years the town of Lunenburgh had been in the practice of furnishing some assistance towards his support, and had generally paid from $1,25 to $1,84 *per* week for keeping him; that in the spring of 1847 the town of Lunenburgh bargained with one Cummings to keep him for a year, and board and clothe him, for $1,50 *per* week; and that Hinman was in Lunenburgh about the first of January, 1848, and again about the first of February, 1848.

The defendants requested the court to instruct the jury, that unless they found, from the testimony in the case, that Hinman was "·suddenly taken sick, or lame, or was otherwise disabled and confined at any house and in need of relief" by being thus suddenly sick, lame, or confined, the plaintiffs could not recover;—that if they found, from the testimony, that Hinman was either sick, lame, or confined and disabled and in need of relief, the plaintiffs, if they recovered at all, could only recover, or make the defendant's liable, while the pauper remained thus lame, sick, or otherwise disabled

and confined at any house;—that the statute, under which this action was brought, will not permit a recovery, where the pauper is not actually confined and unable to be removed;—that although a person may be sick, lame, or otherwise disabled and confined, and thus in need of relief, whenever such person is able either to depart himself, or to be removed, the only legal remedy is by removal;—that there is no legal common law liability of one town to another, for a pauper's support,—that if liable at all, it must be by force of the statute, and not otherwise;—that there is no equity in this case, it being purely a matter of legal liability. And the court were requested to instruct the jury in respect to notifying the overseer of the poor of Charleston, to make the town liable, without which no liability could be fixed on Lunenburgh, and then not for any expenditures before such notice. These requests were complied with, except as is hereinafter stated.

The court charged the jury, that the order of removal given in evidence by the plaintiff, not being appealed from, was conclusive, that Hinman's legal settlement was in Lunenburgh, and no farther evidence was necessary upon that point; that if Hinman had come to reside in Charleston, so as to have a fixed residence, or home, there, the remedy of the town of Charleston would be by an order of removal; but if he was transient merely, and his stay there at this time was of the same character as his previous visits there, without any intention of making a fixed and permanent home there, that then he could not be removed, and the remedy of the town of Charleston would be in this form, if they had any; that if the jury found, that Hinman was disabled and confined at any house in Charleston, within the meaning of the statute, it was not necessary, that they should find it to be the result, or consequence, of his being suddenly taken sick, or lame; that if he was under such disability by reason of a disease, or sickness, of long continuance it would be sufficient; that in order to bring the case within sec. 12 of the statute, under which this suit was brought, the plaintiffs must show, that the pauper was under some severe and serious disability, and in such a condition, that he could not be turned out to take care of himself, without seriously endangering health or personal safety; that it was not necessary for the plaintiffs to show, that the pauper was unable to go out of the house at all, nor that he could not have been carried to

Lunenburgh during this time,—but that it was necessary for them to show, that he was in such condition, that he could not with safety and prudence be turned away, and also that he could not, by any means within his own power, get to his place of settlement, and was in need of relief; and that if the plaintiff had satisfied them, that the pauper was in this condition, and in need of relief, the defendants would be liable to pay such sums, as the plaintiffs had reasonably expended, while the pauper remained in this condition, and no longer. The jury were also instructed, that the declarations of the pauper's wife were not to be regarded as evidence.

Verdict for plaintiffs. Exceptions by defendants.

*R. C. Benton* and *G. C. Cahoon* for defendants.

The plaintiffs, to sustain this action, must make a case within sec. 12 of chap. 16 of the Revised Statutes. But it appears by the bill of exceptions, that the pauper, at the time of the support furnished by the plaintiffs, was a vagrant person, wandering from place to place, and that he was not suddenly taken sick, or lame, nor, in fact, in any way, confined at any house. And from the charge of the court, (though the verdict was for the plaintiffs,) the pauper might have been able to depart from the place, where he was found, or to have been carried to his place of settlement. It was not intended, by the statute, to make one town chargeable for the expense of keeping a pauper in another town, when he is able to be removed; but the charge, in this case, goes upon the ground, that the expense must be paid by Lunenburgh, unless the pauper was able to remove himself.

The legal means were not taken to make the town of Charleston chargeable, by application of the person, at whose house he was, to the overseer; but the overseer acted voluntarily, without application of any one in the first instance.

The court did not charge upon the subject of notice, as requested by the defendants; and the defendants were entitled to have a charge upon that point.

The court erred in admitting the order of removal, and in giving it conclusive effect, as evidence of the settlement of the pauper.

The support of paupers is a matter of mere statutory regulation; there is no equity in it; and no case will be held to come within the

reason and spirit of the statute, unless it come within its terms. *Castleton* v. *Miner*, 8 Vt. 209. *Manchester* v. *Dorset*, 14 Vt. 224. *Bloomfield* v. *French*, 17 Vt. 79.

*J. L. Edwards* for plaintiffs.

An order of removal of a pauper, from which no appeal is taken, is conclusive against the town, to which the removal is made. *Dorset* v. *Manchester*, 3 Vt. 370.

The pauper was a transient person, and " disabled," and in " need of relief," within the terms of the statute, and the plaintiffs are entitled to recover while this disability continued. *Sutton* v. *Cabot*, 19 Vt. 522. *St. Johnsbury* v. *Waterford*, 15 Vt. 692. *Bristol* v. *Rutland*, 10 Vt. 574.

Whether the disability was the result of a disease of long standing, or of a sudden sickness, can make no difference, if the pauper were reduced to the state, that he needed relief. It became a disability none the less, whatever causes might bring it on.

The opinion of the court was delivered by

REDFIELD, J. In regard to the effect of an order of removal, there can be no doubt. It has been settled for many years, that, unless appealed from, it is conclusive evidence of the settlement of the pauper. Numerous cases, in the reports of this state, to that effect, will be found.

Upon the question, whether the case comes within section 12 of chap. 16 of the Rev. St., much will depend upon how far we adopt a merely literal construction. In the most literal construction, we do not think it important, that the sickness should have been sudden. The terms " otherwise disabled" are quite sufficient to include the case of this pauper.

But the very words of the statute are, " confined at any house;" and it is claimed, that no other cases are remediable under the statute. And this would certainly afford a most remarkable instance of strict construction. And this is urged partly upon the ground, that this class of cases is peculiar. But we are not prepared to say, that the courts are limited, in their construction of these statutes, short of their obvious import, more than in the construction of other statutes. The maxim *qui hæret in litera*, &c., applies to these statutes

with the same force, as to any other, so far as we can perceive. It is doubtless true, that many equitable considerations will apply to other relations, which do not apply, as between towns and paupers.

Giving, then, a sensible interpretation to this section, it must include all transient persons, who are in need of present relief. And all persons, not having come to reside in any place, are transient; and no doubt this pauper was sufficiently transient, being, in the language of Judge MATTOCKS, "ever on the tramp." And there can be little doubt, he was sufficiently in need of relief.

We do not think it important, how the overseer became aware of his situation. If he were accidentally present and noticed his necessities, he would not be the less bound to relieve them, but more, perhaps, than if he had but heard of them.

Judgment affirmed.